23CA0847 Lucero v Morales 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0847 Weld County District Court No. 22CV30111 Honorable Shannon D. Lyons, Judge Vincent John Lucero, Plaintiff-Appellant, v. J. Pedro Morales, Defendant-Appellee. JUDGMENT AFFIRMED Division IV Opinion by JUDGE NAVARRO Pawar and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Law Office of Leonard R. Higdon, PLLC, Leonard R. Higdon, Greenwood Village, Colorado, for Plaintiff-Appellant Lucero & Associates, R. Antonio Lucero, Denver, Colorado, for Defendant-
Appellee 
1 ¶ 1 Plaintiff, Vincent John Lucero, appeals the district court’s judgment partitioning real property that he owned jointly with defendant, J. Pedro Morales. We affirm. I. Factual and Procedural History ¶ 2 In May 1996, defendant purchased the subject commercial property and added plaintiff (his stepson) to the title as a joint tenant. Defendant operated a repair business, L&M Auto, on the property. After the business was closed, the parties disagreed about the disposition of the property. Plaintiff then brought this lawsuit, seeking severance of the joint tenancy and equitable partition of the property. ¶ 3 The district court held a bench trial and then issued a written order. According to the evidence admitted at trial and the court’s factual findings, the property was purchased for $55,000 in May 1996. Defendant was the only person to contribute to the down payment of $16,000, providing a check for $3,000 and a car valued at $13,000. The remaining $39,000 was supplied via a loan as documented by a promissory note executed by both parties in their individual capacities. Defendant made monthly payments on the promissory note until March 2001, when he took out a loan on his 
2 residence to pay off the remaining balance. The promissory note was cancelled on March 12, 2001. ¶ 4 Plaintiff testified that the funds defendant used to pay the mortgage came from business proceeds of L&M Auto, to which both parties were entitled. But the court did not find plaintiff’s testimony credible, instead finding that he did not make any contribution to the down payment or pay anything toward the mortgage and that defendant made the mortgage payments out of his own funds. ¶ 5 Defendant testified that, from 1996 to 2020, he and his wife paid the property taxes and that plaintiff did not contribute to those payments. Although plaintiff testified to the contrary, claiming that he paid property taxes and bills with business funds, the court found defendant’s testimony more credible because plaintiff failed to present written evidence showing that the business had paid those taxes. ¶ 6 Regarding L&M Auto, plaintiff testified that he was responsible for the “business aspects” and that defendant did the mechanical work. Plaintiff gave varied testimony about the ownership of L&M Auto, testifying that it was a sole proprietorship but also that it was 
3 a partnership he co-owned with defendant. But plaintiff presented no documentary evidence of such a partnership. After weighing the conflicting testimony, the court found that defendant was the “principal in the business” and that plaintiff was only “peripherally involved” in it. ¶ 7 The court concluded that the parties owned the property in joint tenancy, and the court considered the contributions of each party to equitably divide the proceeds from a future sale. The court found that defendant paid the entire purchase price and property taxes without any contribution from plaintiff. The court therefore decided that defendant’s contribution was $55,000 (purchase price) plus $91,988.20 (property taxes) for a total of $146,988.20. Because plaintiff’s claim was based only “upon his position as a co-
owner under joint tenancy,” the court found plaintiff’s contribution to the property was “essentially zero.” ¶ 8 In particular, the court found the “existence of L&M [Auto] and the purported business partnership” between plaintiff and defendant was not relevant to the disposition of the property. This was true because (1) the property was owned in both party’s individual capacities (not by a business entity); (2) to the extent 
4 L&M Auto might have paid expenses that improved the condition of the property, they were not well documented; and (3) there was evidence that both plaintiff and defendant drew a distinction between the property and the business. No credible evidence was presented showing that the business paid the mortgage or the property taxes. Instead, the court found that the business paid rent to defendant for use of the property and paid compensation to plaintiff “as an officer of L&M [Auto].” ¶ 9 The court further concluded as follows: Given the length of time since the property was acquired, the fact that Defendant was the more responsible party who made all the payments on the mortgage and paid all the property taxes on the property, and the principles concerning the time-value of money, the Court finds it is equitable to quadruple the amount of Defendant’s purchase price paid and to double the amount of the overall property taxes paid. Therefore, the Court shall credit Defendant with $55,000 (purchase price) x 4 = $220,000 plus $91,988.20 (property taxes) x 2 = $183,976.40, for a total credit of $403,976.40. Neither party is entitled to any special credits for other maintenance or property improvements. Thus, upon sale of the property, after payment of closing costs and commissions, Defendant shall receive the first $403,976.40. Thereafter each party shall receive 50% of remaining 
5 proceeds after payment of closing costs and commissions. The parties shall split payment of all closing costs and commissions 50/50. ¶ 10 On appeal, plaintiff argues that the district court erred by (1) concluding that his alleged ownership of the business and asserted partnership with defendant was irrelevant “to the issue of contribution and equitable division”; and (2) crediting defendant with quadruple the amount of contributions to the acquisition of the property and double the amount of property taxes paid. II. Credit for Contributions ¶ 11 As best as we can understand plaintiff’s first argument, he contends that, because defendant’s payments toward the property’s mortgage and taxes derived from the profits of their so-called partnership, the district court should have found that such a partnership existed and then credited plaintiff with an equal portion of those payments when measuring the parties’ contributions to the property. Given the evidence before the court, we are not persuaded that it abused its discretion. A. Relevant Principles ¶ 12 “A court’s function when deciding a partition action is not to create new interests in property held by tenants in common[] but is 
6 merely to sever the unity of possession owned by the tenants.” Martinez v. Martinez, 638 P.2d 834, 836 (Colo. App. 1981). Thus, when partitioning property held by tenants in common, who each possess an undivided one half interest, the court may only assign one half interest in the property to each tenant, not a greater share to either. Id. The district court concluded, and the parties concur, that these same principles apply to partitioning property held in joint tenancy. Having discovered no contrary authority, we also agree. ¶ 13 A partition suit is an equitable proceeding, and a court must make a “complete adjudication as to the rights of all persons to the property.” Id. Under section 38-28-110, C.R.S. 2023, The court at any time may make such orders as it may deem necessary to promote the ends of justice to completely adjudicate every question and controversy concerning the title, rights, and interest of all persons whether in being or not, known or unknown, and may direct the payment and discharge of liens and have the property sold free from any lien or may apportion any lien among the persons to whom the partition is made. After the court has divided the property, the court may then, to reach an equitable result, “compute the contribution of each tenant 
7 and offset any amount owing against the one half share held by each tenant.” Martinez, 638 P.2d at 836. ¶ 14 We review a trial court’s fashioning of an equitable remedy for an abuse of discretion.
1 See Young Props. v. Wolflick, 87 P.3d 235, 237 (Colo. App. 2003). A court abuses its discretion only where it misapplies or misconstrues the law, or if its decision is manifestly arbitrary, unreasonable, or unfair. Gagne v. Gagne, 2019 COA 42, ¶ 16. B. Application ¶ 15 We first emphasize that this action was brought simply to partition real property. Plaintiff did not bring a cause of action accusing defendant of misappropriation of profits from an alleged partnership or any other misconduct related to the alleged 1 We disagree with plaintiff that de novo review is appropriate. His contention does not require us to interpret a statute but merely to review the district court’s equitable remedy. 
8 partnership.
2 So we assume that defendant was fully entitled to whatever money he received from the business. According to the district court’s findings, defendant then used his own funds — including taking out a mortgage on his home — to pay the mortgage on the subject property and the property taxes. Plaintiff, although paid compensation by the business, contributed nothing toward the mortgage or the property taxes. On this record, we cannot conclude that the court abused its discretion by crediting defendant with the contributions at issue. ¶ 16 First, the evidence shows that defendant paid the full down payment for the property. Plaintiff did not indicate that he contributed anything to the down payment. ¶ 17 Second, as to the mortgage payments, the court noted that numerous receipts evidenced payments from defendant to the prior 2 As the district court aptly put it at the bench trial, [T]o the extent that anybody feels like they were taken advantage of, or did not receive their due compensation or business interests out of the business, I’m really not interested. . . . [I]t’s not something I’m going to decide in this case. There’s not a lawsuit about that. . . . I’m only divvying up the property. 
9 owners and that no evidence showed that the business made any of those payments. And defendant testified that plaintiff did not give him money for those payments. While plaintiff testified to the contrary, the court credited defendant’s testimony over plaintiff’s. As noted, defendant obtained a loan on his home to pay off the mortgage early, also without contribution from plaintiff. Plaintiff testified that he knew the loan was paid in full at some point but did not know specifics, and the record showed it was paid off while he was incarcerated. ¶ 18 Third, although plaintiff testified that he used business proceeds to pay property taxes, no other evidence supported his claim. Instead, defendant testified that he and his wife paid all property taxes, which testimony the court found more credible than plaintiff’s claim. Hence, the court determined that defendant was the only one to contribute to property taxes for the duration of property ownership. ¶ 19 To calculate the total of defendant’s contributions for property taxes, the court relied on property tax records and receipts showing the actual and assessed value of the property. While no evidence was presented of property taxes paid from 1996 to 2007, the court 
10 extrapolated the amount of property taxes paid for those years by using the average amount of taxes paid from 2009 through 2021. And the court included its calculations as an attachment to the order. ¶ 20 The court had wide discretion in this partition action. See Young Props., 87 P.3d at 237. Given that the court’s factual conclusions are supported by the record, we do not see an abuse of discretion and will not disturb the court’s findings. See E.S.V. v. People in Interest of C.E.M., 2016 CO 40, ¶ 24 (“The credibility of witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the district court, and we will not disturb that court’s conclusions on review unless they are so clearly erroneous as to find no support in the record.”). ¶ 21 Finally, even if some company funds were used to pay expenses related to the property, that assumed fact would not bolster plaintiff’s claim. The court found not credible his assertion that he was significantly involved in the business. Instead, the court found that defendant was the principal (if not, sole) owner of 
11 the business. Because it has record support, we must defer to this finding. See Young Props., 87 P.3d at 237. ¶ 22 Accordingly, we conclude that the court did not abuse its discretion by crediting defendant for his contributions to the purchase of the property and payment of property taxes. III. Scaling of Contributions ¶ 23 Plaintiff next contends that the district court erred by crediting defendant with quadruple the amount of his actual contributions for the cost of purchasing the land and double the amount of actual contributions for the property taxes. Given the court’s broad discretion over this equitable matter, we see no reason to reverse. A. Relevant Principles ¶ 24 To repeat, a partition suit is an equitable proceeding and after the court has divided the property, it may “compute the contribution of each tenant and offset any amount owing against the one half share held by each tenant.” Martinez, 638 P.2d at 836. Determining those contributions falls within the court’s discretion. Young Props., 87 P.3d at 237. ¶ 25 In this process, a court typically begins with the value of the property being partitioned and assigns half to each party. Martinez, 
12 638 P.2d at 837. The court then subtracts one half of the plaintiff’s contribution from the defendant’s share and adds one half of the plaintiff’s contribution to the plaintiff’s share. Id. This is repeated by subtracting one half of the defendant’s contribution from the plaintiff’s share and adding one half of the defendant’s contribution to the defendant’s share. Id. B. Relevant Facts and Application ¶ 26 The court quadrupled defendant’s attributed contributions to the purchase price of the property from $55,000 to $220,000 and doubled defendant’s attributed contributions for the payment of property taxes from $91,988.20 to $183,976.40. The court found it equitable to increase defendant’s contributions in light of “the length of time since the property was acquired, the fact that Defendant was the more responsible party who made all the payments on the mortgage and paid all the property taxes on the property, and the principles concerning the time-value of money.” The court therefore ordered that defendant receive the first $403,976.40 of any sale proceeds and each party receive 50% of the remaining proceeds after payment of closing costs and commissions. 
13 ¶ 27 The record and common sense support the court’s rationale. Even though the court did not know the exact value of the property because it had not yet been sold (and no party asserted an estimated value through an appraisal), the property’s value would necessarily have appreciated over the prior twenty-seven years, so the value of defendant’s contributions would have increased.
3 Because the court was tasked with finding an equitable remedy, it could consider each party’s involvement and responsibility as it related to the property’s value. Because the district court enjoys wide powers while sitting in equity, we may not substitute our judgment for the court’s. See In re Estate of Owens, 2017 COA 53, ¶ 22 (“We ‘may not reweigh evidence or substitute [our] judgment for that of the trial court.’” (quoting Target Corp. v. Prestige Maint. USA, Ltd., 2013 COA 12, ¶ 24)). And because the court supplied a reasonable justification for its decision, we see no abuse of discretion. 3 The record contains property valuations for tax purposes and an agreed-upon listing price of $650,000 from an exclusive right-to-sell listing contract executed before the lawsuit, although the parties did not end up listing the property at that time. This information supports a finding that the property’s value substantially appreciated over the relevant time. 
14 ¶ 28 Additionally, when the parties do not present thorough evidence to assist a court in partitioning the property, or where there is no final sale amount, a court must rely on the evidence presented to it to the best of its ability. See In re Marriage of Rodrick, 176 P.3d 806, 815 (Colo. App. 2007) (“It is the parties’ duty to present the trial court with the data needed to allow it to value the marital property, and any failure by the parties in that regard does not provide them with grounds for review.”); see also In re Marriage of Nordahl, 834 P.2d 838, 842 (Colo. App. 1992) (upholding business valuation where neither party provided expert evidence and the trial court assessed value based on the only evidence before it). Here, the court sufficiently considered the evidence presented to determine defendant’s contributions and then multiplied those values in accordance with the court’s discretionary powers. ¶ 29 We also note that, while the court might not have followed precisely the calculation process outlined in Martinez, this is likely due to the fact that the court was not presented with the actual value of the property. That is, the court did not have a precise figure at which to begin the calculations. Cf. Martinez, 638 P.2d at 
15 837 (accepting the parties’ stipulated value of the property at the time of trial and using that to calculate the final interests). In practice, however, the court’s order will reach the same outcome as the method outlined in Martinez when the property is sold. ¶ 30 The court found that defendant is entitled to the first $403,976.40 of profit from the sale and any remaining amount would be split equally between the parties (because plaintiff is not entitled to any contributions). This order accounts for defendant’s contributions at the outset, rather than after the sale proceeds have been evenly divided. Regardless of what the final sale price is, however, the amounts allocated to each party remain the same under either calculation method. And the court acted appropriately by considering the parties’ contributions first and only then considering the equitable remedy of increasing defendant’s share of the property’s value. Practically, the court could not divide the actual net equity of the property because there was no sale before trial or stipulated value of the property. But the court’s order will achieve the same financial division once the property is sold. ¶ 31 Consequently, we do not discern an abuse of discretion. 
16 IV. Conclusion ¶ 32 The judgment is affirmed. JUDGE PAWAR and JUDGE JOHNSON concur.